USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 9/10/2026

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------X

BRAIN MURRAY,

Plaintiff,

-against-

LEMONADE, INC.,

Defendant.

---------------------------------------------------------------X

**25-CV-4106 (KHP)**

**<u>Opinion & Order Approving Settlement & Attorneys' Fees & Costs</u>**

**KATHARINE H. PARKER, United States Magistrate Judge:**

Plaintiffs Brian Murray and Leslie Linwood Rich ("Plaintiffs") on behalf of themselves and others similarly situated, commenced this class action against Defendant, Lemonade Inc., alleging violations of the Driver's Privacy Protection Act, the New York General Business Law, and the Connecticut Unfair Trade Practices Act; negligence; and negligence per se. (ECF No. 26). Plaintiffs allege that Defendant had a feature on its website that disclosed the class members' driver's license numbers once their name and address were entered. (ECF Nos. 26; 50 ("Motion for Preliminary Approval") at 11–12). Plaintiffs further allege that individuals used the platform to retrieve Plaintiffs' and class members' driver's license numbers, impacting approximately 190,644 customers. *Id.* On May 3, 2026, this Court preliminarily approved the Class Action Settlement and conditionally certified the Class for Settlement purposes.[1] Now before the

[1] For the purposes of Settlement, the Class was defined at the preliminary approval stage as follows:

> All living, natural persons residing in the United States whose Personal Information was compromised in the Data Exposure, including all persons who were sent notice of the Data Exposure. Excluded from the Settlement Class are: (1) the Judge(s) presiding over the Action and members of their immediate families and their staff; (2) Lemonade, its subsidiaries, parent companies, successors, predecessors, and any entity in which Lemonade or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person

(ECF No. 56 ("Preliminary Approval Order") at 5).

Court are Plaintiffs' Motion for Final Approval of the Settlement and Motion for Attorneys' Fees. (ECF Nos. 57, 60). Both Motions are unopposed. (ECF No. 59). A Fairness Hearing (the "Hearing") was held on September 10, 2026. For the reasons stated on the record at the Hearing and those set forth below, Plaintiffs' Motions are granted, and the Settlement is approved.

## The Proposed Settlement

### I. Settlement Fund and Other Relief

The total settlement amount is $10,500,000 (the "Settlement Fund"). (ECF No. 61 ("Motion for Final Approval") at 10). Once the Settlement Fund is used to pay for all administrative fees,[2] service awards,[3] Court-approved fees and costs,[4] and any taxes/escrow fees, the remaining amount will pay for credit monitoring and insurance services ("CMIS" or "credit monitoring") and cash payments for approved claims submitted by Class Members. *Id.* Class Members will be able to submit claims for the following: (1) a documented loss payment (up to $10,000) and/or (2) a pro rata cash payment. *Id.* Class Members also get three years of CMIS, which provides up to $1,000,000 in identify theft protection and credit monitoring with three credit bureaus. *Id.* Defendant, beyond the Settlement Fund, has also agreed to implement changes and security features to better strengthen its protection of customer data.

[2] Kroll Settlement Administration LLC, the Settlement Administrator, has currently billed $67,746.06 and expects to bill an additional $393,738 for its administrative services rendered as outlined below. (ECF No. 61-1 ("Kroll Declaration") ¶ 19).
[3] Plaintiffs have requested Service Awards of $2,000 each for the two named Plaintiffs—Brian Murray and Leslie Linwood Rich. (ECF No. 58 at 9).
[4] Plaintiffs are seeking attorneys' fees of $3,500,000, and costs totaling $22,268 to be paid out from the Settlement Fund. *Id.*

*Id.* at 11. Such changes will be effective for at least three years from the date of this Settlement. *Id.*

In the instance that there are residual funds, remaining funds will be distributed pro rata among Class Members with approved Claims. *Id.* Any funds that cannot be distributed shall be distributed to the Non-Profit Residual Recipient: Electronic Frontier Foundation. *Id*.; (Motion for Preliminary Approval at 5). Plaintiffs have also filed a Motion for Attorneys' Fees, seeking attorneys' fees in the sum total of $3,500,000 (one-third of the Settlement Fund), costs of $22,286, and service awards of $2,000 each for the two named Plaintiffs. *Id.* at 12; ECF No. 58 at 9. The Settlement is not conditioned on approval of the attorneys' fees or service awards.

## II. Notice

The Parties selected Kroll Settlement Administration LLC ("Kroll") as the Settlement Administrator. (ECF No. 61-1 ("Kroll Declaration") ¶ 3). Kroll used files retrieved by Defendant, containing the records of the 190,802 individuals[5] who were impacted by the data exposure, and created a Settlement Class List. (Motion for Final Approval, at 12–13). Kroll's duties included: sending notices pursuant to the Class Action Fairness Act; creating a P.O. box and a toll-free telephone number; creating a settlement website for online claims to be filed; preparing and sending the postcard notice; issuing a press release; forwarding mail as necessary and reprocessing undeliverable mail; and processing claims forms, requests for exclusion, and objections. (Kroll Declaration ¶ 3). Kroll mailed the notice pursuant to the Class Action Fairness Act on April 23, 2026. *Id.* ¶ 4. By May 6, 2026, Kroll had set up the P.O. box (P.O. Box 225391,

[5] Kroll found that sixteen of these files were duplicates, making the total number of unique records 190,786. (Kroll Declaration ¶ 8).

New York, NY 10150-5391), a toll-free telephone number (833-447-6429), and website (www.LemonadeDataDisclosureSettlement.com). *Id.* ¶¶ 5–7. By June 8, 2026, all 190,786 postcard notices were sent to all 190,786 identified individuals, and a press release was issued through PR Newswire's US1 National Newsline. *Id.* ¶¶ 9–10. Kroll represents that the postcards reached approximately 98.42 percent of Class Members. *Id.* ¶ 13.

### III. Claims and Class Member Release

As of August 14, 2026, Kroll had received 13,476 claims—a response rate of 7.06 percent. *Id.* ¶15. As of the date of the fairness hearing, Plaintiffs' counsel represented the response rate increased to over 8 percent—well above the average claims rate in similar cases. Class Members who opted to receive cash payments stand to receive approximately $429 per person. *Id.* Only two exclusions were received by the deadline for requests for exclusions and no objections were filed. *Id.* ¶ 18. The releases contained within the Settlement Agreement are tailored solely to those claims arising from this particular data exposure.[6]

[6] The release clause states as follows:

> release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous proceeding against each of the Released Parties that relates to the Data Exposure or otherwise arises out of same facts and circumstances set forth in the class action complaint in the Action. This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement.

(ECF No. 50-1 ("Settlement Agreement"), at 16–17).

## ANALYSIS

### I. Class Certification

The parties have asked this Court to certify a settlement class defined in their settlement agreement:

> "Settlement Class" and "Class" means all living, natural persons residing in the United States whose Personal Information was compromised in the Data Exposure, including all persons who were sent notice of the Data Exposure. Excluded from the Settlement Class are: (1) the Judge(s) presiding over the Action and members of their immediate families and their staff; (2) Lemonade, its subsidiaries, parent companies, successors, predecessors, and any entity in which Lemonade or its parents, have a controlling interest, and its current or former officers and directors; (3) natural persons who properly execute and submit a Request for Exclusion prior to the expiration of the Opt-Out Period; and (4) the successors or assigns of any such excluded natural person.

(ECF No. 50-1 ("Settlement Agreement"), at 9). Before approving a class action settlement, the court must first conclude that the proposed class meets the requirements for class certification under Federal Rule of Civil Procedure 23(a)–(b). *In re Am. Intern Grp., Inc. Sec. Litig.*, 689 F.3d 229, 237–38 (2d Cir. 2012) ("The party seeking 'class certification must affirmatively demonstrate . . . compliance with the Rule,' and a district court may only certify a class if it 'is satisfied, after a rigorous analysis,' that the requirements of Rule 23 are met." (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011))). The court is to pay special attention to those specifications in Rule 23 that are intended "to protect absentees by blocking unwarranted or overbroad class definitions," given the posture of settlement. *Id.* at 239 (quoting *Anchem Products, Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). The Court previously found when preliminarily approving the settlement that the Rule 23 criteria had been met.

Nothing has changed to disturb that finding. Nevertheless, for completeness, I address the factors below.

a. Rule 23(a)'s Preliminary Requirements

First, courts look to the preliminary requirements of Rule 23(a)—numerosity, commonality, typicality, and adequate representation. Fed. R. Civ. P. 23(a). As to the first requirement of numerosity, the class must be "so numerous that joinder of all members is impracticable. *Id.* Generally, a court may find this factor satisfied where the class exceeds 40 members. *Consol. Rail Corp. v. Town of Hyde Park*, 47 F.3d 473, 483 (2d Cir. 1995); *see also Cruz Guerrero v. Montefiore Health Sys. Inc.*, No. 22 Civ. 9194, 2025 WL 100889, at *4 (S.D.N.Y. Jan. 15, 2025). Here, the class exceeds 40 members as it is estimated to have approximately 190,786 members. (Kroll Declaration ¶ 8). Therefore, numerosity is satisfied.

As for the second and third factors, commonality and typicality, the court considers whether "there are questions of law or fact common to the class" and whether "the claims or defenses . . . are typical of [those] of the class. Fed. R. Civ. P. 23(a)(2)–(3). For a class to satisfy the commonality requirement, the claims must "depend upon a common contention . . . that is capable of classwide resolution," with a "determination of [the claims'] truth or falsity resolv[ing] an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc.*, 564 U.S. at 350. Commonality can be found where the class members' injuries "derive from a unitary course of conduct by a single system." *Marisol A. v. Guiliani*, 126 F.3d 372, 376–77 (2d Cir. 1997); *Cruz Guerrero*, 2025 WL 100889, at *4. Typicality can be satisfied where the claims arise from the same events or set of facts and similar legal

arguments can be made by each of the class members. *Marisol A.*, 126 F.3d at 376–77; *Cruz Guerrero*, 2025 WL 100889, at *4.

Here, Class Members and named Plaintiffs were both affected by the allegedly unlawful conduct of Defendant—the disclosure of their data and information. Additionally, there are common questions of law and fact related to the Defendant's purported duty to protect the data and information of Class Members, specifically their driver's license numbers, and whether Defendant breached that duty and violated various statutes by having a system that disclosed such information. (ECF No. 26). That is, there are common questions of fact regarding Defendant's technology and security features and common questions of law regarding Defendant's duty and liability under the relevant statutes. Further, named Plaintiffs' claims—that they suffered harm caused by disclosure of their data in this manner—are typical of the class. Therefore, Rule 23(a)'s requirements of commonality and typicality are met.

Finally, as to the requirement of adequate representation, Plaintiffs must demonstrate that they represent the interests of class members, do not have conflicts, and that Class Counsel is equipped and experienced to conduct the litigation. Fed. R. Civ. P. 23(a)(4); *Marisol A.*, 126 F.3d at 378 (finding that where the plaintiffs were seeking relief that would serve the interests of all class members, the interests were identical and the representation was adequate). Here, Plaintiffs, as individuals harmed by the alleged data disclosure and Defendant's purportedly insufficient security features, have the same interests as the other class members affected by the same data disclosure. (ECF No. 50-2 ("Joint Declaration of Class Counsel") ¶¶ 24–25). Additionally, Plaintiffs have demonstrated this commitment by retaining

qualified legal counsel and participating in settlement negotiations and attending the final Hearing. *Id.* As to the matter of Class Counsel's capabilities, Class Counsel has extensive experience litigating class actions, particularly those relating to data breaches, investigated the matter thoroughly, and negotiated a favorable settlement for the class. *Id.* ¶ 26. The Court was able to judge the competence of Class Counsel in court appearances and through excellent briefing. Therefore, the Court finds that Plaintiffs and Class Counsel satisfy the requirement of adequate representation.

b. Rule 23(b)(3)'s Requirements

In addition to satisfying the preliminary requirements of Rule 23(a), parties in this type of action must satisfy the requirements of Rule 23(b)(3). Fed. R. Civ. P. 23(b)(3). Under Rule 23(b)(3), there must be (1) "questions of law or fact common to class members [that] predominate over any questions affecting [] individual members" and (2) a finding "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[7] Fed. R. Civ. P. 23(b)(3); *see also Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Plaintiffs must show that the legal and factual questions that constitute a genuine controversy can be resolved with generalized proof. *Myers v. Hertz Corp.*, 624 F.3d 537, 547 (2d Cir. 2010) (citing *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1252 (2d Cir. 2002)); *see also Sykes v. Mel S. Harris & Assoc. LLC*, 780 F.3d 70, 87–88 (2d Cir. 2015) (affirming the district court's finding that where the class members claims arose out of a "uniform practice" the common questions predominated, regardless of individualized issues that may arise around

[7] The Court does not need to consider whether the action would create "intractable management problems" at trial, because there will not be a trial. *Amchem Prods. Inc.*, 521 U.S. at 620.

causation and damages). Plaintiffs also must show that the class action would provide "significant economies of 'time, effort and expense, and promote uniformity of decision.'" *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 130–31 (2d Cir. 2013) (quoting Fed. R. Civ. P. 23 advisory committee's notes to 1966 amendment).

As outlined above, the Class Members were subjected to the same, allegedly harmful practice—the auto population of their driver's license numbers—which presents a common issue. Additionally, whether Defendant violated the Driver's Privacy Protection Act, the New York General Business Law, and the Connecticut Unfair Trade Practices Act, and was negligent are questions central to each of the Class Member's claims, regardless of any individualized issues regarding the degree of damages an individual may have faced as a result of the improper disclosure. Therefore, the Court finds that there are common issues of fact and law that predominate over all the Class Members' claims. *Sykes*, 780 F.3d at 87–88. Further, as there are only two requests for exclusion, no objections, and no other individual actions that the Court is aware of, it is desirable to concentrate the claims in this Court. Therefore, the Court finds that the Rule 23(b)(3) factors are met. *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d at 130–31.

Accordingly, the Court certifies the Class for purposes of the Settlement.

## II. Class Settlement Approval

Generally, to grant final approval of a settlement, courts must consider whether the settlement is fair and reasonable under Rule 23(e)(2). Fed. R. Civ. P. 23(e)(2); *Cruz Guerrero*, 2025 WL 100889, at *6. Rule 23(e)(2) requires that courts considers whether the following is

present in the subject settlement proposal: adequate representation, arms-length negotiation, adequate relief (considering "costs, risks, and delay of trial and appeal"; effectiveness of relief distribution; attorneys' fee terms; and any other agreement to be disclosed pursuant to Rule 23(e)), and equitable treatment for class members. Fed. R. Civ. P. 23(e)(2). These considerations are intended to evaluate the procedural and substantive fairness of the proposed settlement. *D'Amato v. Deutsche Bank*, 236 F.3d 78, 85–87 (2d Cir. 2001). Additionally, prior to the 2018 amendment of Rule 23, the Second Circuit applied the *Grinnell* factors when evaluating the fairness of a settlement, as enumerated in *City of Detroit v. Grinnell Corporation*. 495 F.2d 448 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000). These factors include the following:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Id.* at 463. These factors are to be considered in tandem with Rule 23(e). Fed. R. Civ. P. 23(e) (advisory committee's notes to 2018 amendment); *Cruz Guerrero*, 2025 WL 100889, at *6.

a. <u>Procedural Fairness</u>

The Court first turns to the considerations outlined in Rule 23(e), the first of which is whether there was adequate representation by class counsel and the class representatives. Fed. R. Civ. P. 23(e)(2)(A); *D'Amato*, 236 F.3d at 85–87. As outlined above, Plaintiffs and Class Counsel are adequate representatives for the Class. Plaintiffs' interests are aligned with the

Class Members as they suffered the same alleged harm from Defendant's purported failure to have proper security measures to protect Class Members' data from disclosure. *See supra*. Further, Class Counsel has extensive experience in data disclosure class actions and successfully negotiated a favorable outcome for Plaintiffs and Class Members. *See supra.* Therefore, the Court finds that the representation is adequate.

Next, the Court must consider whether the negotiations were conducted at arms-length. Fed. R. Civ. P. 23(e)(2)(B). Although under the Second Circuit's decision in *Moses v. New York Times Co.* courts cannot presume fairness based solely on the presence of an arms-length negotiation, courts do still consider whether the negotiating process did occur at arm's length. 79 F.4th 235, 243 (2d Cir. 2023); *see also Marin v. 310 Bowery Grp. LLC.*, No. 24 Civ. 1340, 2025 WL 2267785, at *6 (S.D.N.Y. Aug. 8, 2025). In this case, the Parties reached a settlement with the assistance of an experienced mediator and following the exchange of pre-mediation disclosures and confirmatory discovery. (Joint Declaration of Class Counsel ¶¶ 11–18); *Marin*, 2025 WL 2267785, at *6 (finding that where the parties reached an agreement with a private mediator over several weeks, the negotiations had been at arm's length); *Schutter v. Tarena Int'l, Inc.*, No. 21 Civ. 3502, 2024 WL 4118465, at *7 (E.D.N.Y. Sept. 9, 2024) (finding that where settlement negotiations occurred over a month with a mediator and a double blind proposals, the negotiations were conducted at arm's length). Therefore, the Court finds that the negotiations occurred at arm's length.

Accordingly, the Court finds that the Settlement satisfies Rule 23(e)'s requirement for procedural fairness.

b. Substantive Fairness

Next, the Court turns to consider whether the Settlement is substantively fair, first evaluating whether the Settlement provides adequate relief and treats the class members "equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(C)–(D). Here, courts consider several factors, including the following: (1) "the costs, risks, and delay of trial and appeal"; (2) the effectiveness of relief distribution; (3) attorneys' fees proposal; and (4) any other agreement "made in connection with the proposal." Fed. R. Civ. P. 23(e)(2)–(3). Courts also consider the *Grinnell* factors. *Grinnell*, 495 F.2d at 463; Fed. R. Civ. P. 23(e) (advisory committee's notes to 2018 amendment); *Cruz Guerrero*, 2025 WL 100889, at *7.

*1. Costs and Risks of Trial and Appeal*

I first turn to the consideration of the costs and risks associated with proceeding to trial as outlined in Rule 23(e)(2)(C)(i). I also consider first, third, fourth, fifth, and sixth *Grinnell* factors—"the complexity, expense and likely duration of the litigation"; "the stage of the proceedings and the amount of discovery completed"; "the risks of establishing liability"; "the risks of establishing damages"; and "the risks of maintaining the class action through the trial"—which overlap. *Grinnell*, 495 F.2d at 463; *Carbone v. Limited Run Games, Inc.*, No. 24 Civ. 8861, 2026 WL 686144, at *5 (E.D.N.Y. Mar. 11, 2026); *see also Rosenfeld v. Lenich*, No. 18 Civ. 6720, 2021 WL 508339, at *5 (E.D.N.Y. Feb. 11, 2021) ("Class action suits 'have a well-deserved reputation as being most complex'" (quoting *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 36 (E.D.N.Y. 2019))). Courts generally favor settlement in instances where there is a great deal of uncertainty and potential delay that accompany the

potential trial. *See, e.g.*, *Carbone*, 2026 WL 686144, at *5 (finding that in a data disclosure case, the costs of trial were still high with several rounds of motion practice likely ahead, as well as possible disputes over damages and other protracted proceedings); *Rosenfeld*, 2021 WL 508339, at *5 (finding that where the risks, costs, and delay that came with a potential trial were high, settlement was preferred).

If this case did not settle, there would have been motion practice to dismiss the action, certify the class, and for summary judgment, all of which would be costly. Additionally, further litigation would raise technical issues regarding Defendant's platform and portals, which would likely involve extensive discovery into Defendant's systems, only increasing the cost and extending the timeline of an action that has already been ongoing for approximately a year. (Motion for Final Approval, at 16). Therefore, the Court finds that the costs and risks of trial and the first and third *Grinnell* factors weigh in favor of approving the settlement.

Although this case settled at an early stage, the parties were still sufficiently informed on the facts to evaluate the case. They exchanged pre-mediation and confirmatory discovery as a part of the settlement process, providing counsel with an understanding of the case and both parties' respective strengths and weaknesses. (Joint Declaration of Class Counsel ¶¶ 13–21); *see, e.g.*, *Moure v. DialAmerica Marketing, Inc.*, No. 22 Civ. 625, 2025 WL 3896786, at *5 (D. Conn. Apr. 7, 2025) (finding that where counsel had engaged in investigation, informal discovery, and general information gathering, along with expert consultation, the parties had substantial information to properly weigh the strengths and weaknesses of the case). This information provided Class Counsel with a fulsome understanding of the risks ahead with trial,

such that they identified that there may be difficulties establishing liability under the Drivers Privacy Protection Act. (Motion for Final Approval at 16–19). This uncertainty, along with the uncertainty of how expert discovery focused on technical issues like data security would impact Plaintiff's claims, creates a level of risk for Plaintiffs that would increase the closer the case got to trial. And, there have been few trial of privacy class actions and none to this Court's knowledge involving the Drivers Privacy Protection Act. Any case where counsel are advocating new and emerging areas of law carry inherent risk. Therefore, the Court finds that the fourth, fifth, and sixth *Grinnell* factors weigh in favor of approving the Settlement.

*2. Effectiveness of Relief Distribution and Class Reaction to the Settlement*

Next, I turn to consider the effectiveness of the proposed methods of distributing relief and the Class reaction to the Settlement as outlined in Rule 23(e)(2)(C)(ii) and the second *Grinnell* factor, respectively. First, when considering the methods for distributing relief, courts generally consider the methods of notice, rates of participation, and methods for distributing the settlement fund. *Cruz*, 2025 WL 100889, at *9 (finding that a plan distributing proceeds on a pro rata basis, net of expenses and attorneys' fees was reasonable and should be approved); *see also In re WorldCom, Inc. Sec. Litig.*, 388 F. Supp. 2d 319, 344 ("To warrant approval, the plan of allocation must also meet the standards by which the settlement was scrutinized—namely, it must be fair and adequate" (quoting *Malev v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002))). Kroll, as the Settlement Administrator, collected a list of impacted Class Members from Defendant, totaling 190,786 unique Class Members. (Kroll Declaration ¶ 8). Kroll further set up postcard mailing notices, a telephone number, and a website, along

with mail-in and online options for Class Members to file their claims. *Id.* ¶¶ 5–10. So far, the mail notice reached about 98.42 percent of the Class, with approximately an 8 percent participation rate. Furthermore, claimants will be able to receive a documented loss payment (up to $10,000) and/or a cash fund payment, which will be paid pro rata[8] once all claims are submitted. *Id.* Exh. D. Class Members can receive the Settlement payment by check by sending a paper claim form or electronically (Zelle, Venmo, Paypal, or ACH) by filing an electronic claim on the website. *Id.* Exh. E. Finally, Class Members were provided with unique codes to activate their three years of credit monitoring with the original postcard that was mailed providing notice. *Id.* Exh. D. Taking into account the high rate of participation and the reasonable methods Kroll used and intends to use, the methods of distributing relief weigh in favor of approving the Settlement.

Next, when considering a class's reaction to a settlement (the second *Grinnell* factor), the court generally looks to the number of objections and opt-outs. *In re Sinus Buster Prods. Consumer Litig.*, No. 12 Civ. 2429, 2014 WL 5819921, at *9 (E.D.N.Y. Nov. 10, 2014) ("Courts have found this factor to weigh in favor of approval where the majority of class members have not objected to or opted out of a settlement."); *In re Telik, Inc. Sec. Litig.*, 576 F. Supp. 2d 570, 577 (S.D.N.Y. 2008) (finding that in a class of 54,000 members, only three objections were made, indicating a strong positive reaction to the settlement and weighing in favor of approval). The Class in this case has largely responded positively to the Settlement. There have been no

[8] Plaintiffs have represented that these pro rata payments will be calculated based on the net of the Settlement Fund, after any costs, fees, and the payment for the credit monitoring services have been deducted. (Motion for Final Approval at 21).

objections and only two requests for exclusion. (Kroll Declaration ¶ 18). Therefore, the Class's positive reaction to the settlement also weighs in favor of approving the Settlement.

*3. Proposed Award of Attorneys' Fees*

The Court now turns to Plaintiff's motion for attorneys' fees and considers whether the proposed award is reasonable pursuant to Rule 23(e)(2)(c)(iii). Generally, under Rule 23(h), the Court may award reasonable attorneys' fees and costs authorized in a settlement agreement. Fed. R. Civ. P. 23(h). Courts have found the percentage method, providing a set percentage of the fund for counsel's costs and fees, proper, specifically when guided by the factors established in *Goldberger v. Integrated Resources, Inc*..[9] 209 F.3d 43 (2d Cir. 2000); *Central States Southeast & Southwest Areas Health & Welfare Fund. v. Merck-Medco Managed Care LLC*, 504 F.3d 229, 249 (2d Cir. 2007) ("[W]hen a representative plaintiff successfully establishes or protects a fund in which the other class members have a beneficial interest, the costs of litigation may be distributed among the fund's beneficiaries" (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980))). In applying the percentage method and the *Goldberger* factors, courts have found that contingency fees up to one-third are appropriate and reasonable in the context of a class action settlement. *Central States Southeast & Southwest Areas Health & Welfare Fund.*, 504 F.3d at 249–50 (affirming the district court's decision to award 30 percent of the settlement fund to class counsel); *Azogue v. 16 for 18 Hospitality LLC*, No. 13 Civ. 7899,

[9] These factors are as follows: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 50 (2d Cir. 2000) (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

2016 WL 4411422 (S.D.N.Y. Aug. 19, 2016) ("Class Counsel's request for one-third of the Fund is reasonable and 'consistent with the norms of class litigation in this circuit'" (quoting *Yuzary v. HSBC Bank USA, N.A.*, No. 12 Civ. 3693, 2013 WL 5492998, at *10 (S.D.N.Y. Oct. 2, 2013))). Here, Class Counsel is seeking the following: (1) an attorneys' fee of one-third of the Settlement Fund ($3,500,000), (2) reimbursement of costs of $22,268, and (3) service awards for the named Plaintiffs in the amount of $2,000 each. (ECF No. 58 ("Motion for Attorneys' Fees") at 9). This request falls well within the boundaries of a reasonable fee. Therefore, the Court finds the reasonable nature of the requested attorneys' fees weigh in favor of approval.

*4. Other Agreements*

The Plaintiffs represent that there is no other agreement beyond the Settlement Agreement for the Court to consider. (Motion for Final Approval at 22). However, the Settlement Agreement itself contains an agreement to pay the two named Plaintiffs $2,000 each, for a total of $4,000, from the Settlement Fund and an agreement regarding the release of claims. Courts generally permit such awards to be deducted from the Settlement fund and awarded to named Plaintiffs when the named Plaintiffs have carried the burden of bringing the action. *Hyland v. Naviant Corp.*, 48 F.4th 110, 124 (2d Cir. 2022) (affirming the district court's granting of $15,000 service awards to the named plaintiffs); *Stinson v. City of New York*, 256 F. Supp. 3d 283, 295 (S.D.N.Y. 2017) (granting $15,000 service awards for the named plaintiffs where they had invested time and incurred a degree of personal risk). In its Motion for Attorneys' Fees, Class Counsel represents that the named Plaintiffs have been exceedingly helpful over the course of the case and that they have expended substantial time and energy

engaging in document production and reviewing pleadings and the Settlement Agreement itself. (ECF No. 58-1 ¶ 11). In light of the named Plaintiffs' commitment to reaching a resolution in this case, the Court finds that the agreement to provide service awards of $2,000 each is reasonable and weighs in favor of approving the settlement.

When looking at the release called for by the settlement, courts generally evaluate whether the release is narrowly tailored to the dispute underlying the class action and not overly broad. *See, e.g.*, *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig.*, 330 F.R.D. at 42–43 ("Courts have denied preliminary approval where releases from liability are deemed to be overly broad."). Here, the release clause states that the Class Members,

> release and discharge all Released Claims, including Unknown Claims, against each of the Released Parties and agree to refrain from instituting, directing or maintaining any lawsuit, contested matter, adversary proceeding, or miscellaneous *proceeding against each of the Released Parties that relates to the Data Exposure or otherwise arises out of same facts and circumstances set forth in the class action complaint in the Action.* This Settlement releases claims against only the Released Parties. This Settlement does not release, and it is not the intention of the Parties to this Settlement to release, any claims against any third party. Nor does this Release apply to any Class Member who timely excludes himself or herself from the Settlement.

(Settlement Agreement at 16–17) (emphasis added). The Court finds that this release is narrowly tailored as it limits the release to those claims related to the particular "Data Exposure" in dispute. Therefore, this release is not overbroad and is reasonable, weighing in favor of approving the Settlement.

*5. Equitable Treatment of Class Members*

Next, I turn to consider whether the proposed Settlement treats the Class Members equitably pursuant to Rule 23(e)(2)(D). Generally, courts have found pro rata distributions to be equitable treatment of each of the class members. *Meredith Corp. v. SESAC, LLC*, 87 F. Supp. 3d 650, 667 (S.D.N.Y. 2015) (finding a pro rata distribution equitable); *Jackson v. Ampac Paper, LLC*, No. 22 Civ. 3120, 2025 WL 2346065, at *7–8 (S.D.N.Y. Aug. 13, 2025) (finding that where there were service awards, a $50 payment to each claimant, and a pro rata distribution of the net settlement fund, the treatment of class members was equitable). This pro rata distribution, the documented loss payments, and access to credit monitoring services are a fair and reasonable use of the Settlement Fund, treating each Class Member equitably in relation to each other. As outlined above, the service awards are reasonable and do not impact the Court's finding. Therefore, I find that the equitable treatment of the Class Members weighs in favor of approving the Settlement.

*6. Ability of Defendant to Withstand Greater Judgment*

Next, I turn to consider the ability of the defendant to withstand greater judgment (seventh *Grinnell* factor). *Grinnell Corp.*, 495 F.2d at 463. Courts consider whether a defendant could handle a greater judgment than what is outlined in the Settlement, and if the court finds that the defendant could not, it is more likely that the proposed settlement is reasonable and fair. *Flores v. CGI Inc.*, No. 22 Civ. 350, 2022 WL 13804077, at * 8 (S.D.N.Y. Oct. 21, 2022); *see also Carbone*, 2026 WL 686144, at *7 (finding that where there was a lack of clarity on whether the defendant could withstand a greater judgment, this factor was neutral). In this case,

Defendant is a new company that is not yet profitable. At the Hearing, counsel provided an overview of Defendant's financial state that makes it clear an early settlement is reasonable because there is assurance of payment and elimination of any risk that Defendant's ability to pay will not be an ongoing concern. Thus, this factor weighs in favor of approving the Settlement.

*7. Reasonableness of the Settlement Fund*

Finally, I consider the reasonableness of the Settlement Fund (eighth and ninth *Grinnell* factors). *Grinnell Corp.*, 495 F.2d at 463. Courts generally compare the terms of the proposed settlement with potential outcomes in litigation in evaluating this factor. *Flores*, 2022 WL 13804077, at *8 (citing *In re Payment Card Interchange Fee & Merchant Discount Antitrust Litig*., 330 F.R.D. at 48). This analysis is intended to account for uncertainty and the costs that accompany litigation. *Id.* (citing *Mikhlin v. Oasmia Pharmaceutical AB*, No. 19 Civ. 4349, 2021 WL 1269559, at *8 (E.D.N.Y. Jan. 6, 2021)); *see also Schutter v. Tarena Int'l, Inc.*, No. 21 Civ. 3502, 2024 WL 4118465, at *12 (E.D.N.Y. Sept. 9, 2024) (finding that where there was motion practice remaining and uncertainty regarding the outcome of litigation, approval of the settlement was favored). In this case, the Parties have settled for a total amount of $10,500,000. The recovery per class member compares favorably to other similar settlements approved in this District. (ECF No. 26 ¶ 26); *In re USAA Data Sec. Litig.*, No. 21 Civ. 5813, 2025 WL 1456827, at *1–6 (S.D.N.Y. May 21, 2025) (approving a settlement of $3,250,000 for a total class of approximately 22,646 individuals); *In re Christie's Data Litig.*, No. 24 Civ. 4221, 2025 WL 212487, at *1–4 (S.D.N.Y. July 28, 2025) (approving a settlement of $990,000 for approximately

45,726 class members). Given the uncertainties that would accompany further litigation, as outlined above, the Court finds that this Settlement Fund amount is reasonable and that these two factors weigh in favor of approving the Settlement.

## Attorneys' Fees and Costs

### I. Attorneys' Fees and Costs

Generally, as outlined above, under Rule 23(h), the Court may award reasonable attorneys' fees and costs authorized in a settlement agreement, and courts have found the percentage method, providing a set percentage of the fund to provide for counsel's costs and fees, proper.[10] Fed. R. Civ. P. 23(h); *Central States Southeast & Southwest Areas Health & Welfare Fund.*, 504 F.3d at 249 (citing *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980)). However, where a Court relies on a percentage-based fee, the Second Circuit has indicated that there should be a "cross-check" with the lodestar fee to ensure that the percentage fee is reasonable. *Fresno Cnty Emps.' Retirement Assoc. v. Isaacson/Weaver Family Tr.*, 925 F.3d 63, 72 (2d Cir. 2019). Such percentage fees are also to be evaluated with the *Goldberger* factors: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations." *Goldberger*, 209 F.3d at

[10] Courts have discretion when choosing to implement either the lodestar analysis or a percentage analysis to determine whether the proposed attorneys' fees are proper. *McDaniel v. Cnty of Schenectady*, 595 F.3d 411, 417 (2d Cir. 2010) ("Courts 'may award attorneys' fees in common fund cases under either the 'lodestar' method or the 'percentage of the fund' method.'" (quoting *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005), *overruled on other grounds by Moses v. New York Times Co.*, 79 F.4th 235 (2d Cir. 2023))).

50 (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)).

Class Counsel is seeking the following: (1) an attorneys' fee of one-third of the total Settlement Fund of 10,500,000 ($3,500,000), (2) reimbursement of costs of $22,268, and (3) service awards for the named Plaintiffs in the amount of $2,000 each. (ECF No. 58 ("Motion for Attorneys' Fees") at 9). Class Counsel—Ahdoot & Wolfson, PC; Berger Montague PC; Morgan & Morgan Complex Litigation Group ("Morgan & Morgan")—has spent a combined 1,057.5 hours on the litigation and settlement of this matter as outlined below.

- Ahdoot Wolfson has spent 461.3 hours on this matter, totaling $429,992 in fees;
- Berger Montague has spent 389.7 hours on this matter, totaling $365,098 in fees; and
- Morgan & Morgan has spent 206.5 hours on this matter, totaling $234,810.20.

(ECF No. 58-1 ¶¶ 12, 16–18). Rates for the attorneys ranged from $508 to $1,600, and rates for the paralegals and other support staff ranged from $200 to $725, with the total amount of fees being $1,029,900.20. *Id.* ¶ 19. These rates are well within the range awarded by Courts in this District for attorneys in complex matters like this one. The hours spent, likewise, are reasonable given the work done and breadth and scale of this case and novel questions raised by the facts under the Drivers Privacy Protection Act.

Turning first to the lodestar cross-check, although the requested amount in attorneys' fees, $3,500,000, does exceed the lodestar amount based on the hourly rates, $1,029,900.20,[11]

[11] Class Counsel notes that the lodestar is $1,029,800.20; however, this appears to be a mathematical error. (ECF No. 58-1 ¶ 21).

courts generally apply a lodestar multiplier. *See, e.g.*, *James v. China Grill Mgmt., Inc.*, No. 18 Civ. 455, 2019 WL 1915298, at *3 (S.D.N.Y. Apr. 30, 2019). This multiplier is calculated by dividing the proposed fee award by the "lodestar," which is the reasonable hours multiplied by a reasonable hourly rate. *Id.* Here, the lodestar multiplier is 3.4. (ECF No. 58-1 ¶¶ 12, 16–20, 22). Courts have approved lodestar multipliers ranging from two to six. *Carbone*, 2026 WL 686144, at *9 (collecting cases); *Morris v. Affinity Health Plan, Inc.*, 859 F. Supp. 2d 611, 623 (S.D.N.Y. 2012) (same); *see also Nordhaus*, No. 15 Civ. 6689, 2024 WL 1514298, at *3 (S.D.N.Y. Apr. 8, 2024) (approving attorneys' fees amounting to one-third of the settlement by applying the lodestar method as a comparison) (collecting cases). Therefore, the multiplier of 3.4 is a reasonable lodestar multiplier, demonstrating the reasonable nature of the proposed attorneys' fees.

Additionally, upon a review of the *Goldberger* factors, it is even clearer that the request is reasonable in light of the hours Class Counsel has already expended and expects to expend. *Goldberger*, 209 F.3d at 50 (quoting *In re Union Carbide Corp. Consumer Prods. Bus. Sec. Litig.*, 724 F. Supp. 160, 163 (S.D.N.Y. 1989)). First and foremost, Class Counsel has expended over 1,000 hours on this matter, including coordination and investigation with the named Plaintiffs and other Class Members regarding their claims, engaging in initial disclosures and pre- and post-mediation discovery, engaging in mediation discussions, and coordinating with the Settlement Administrator. (ECF No. 58-1 ¶¶ 2–3). Class Counsel provided additional hours preparing for the Fairness Hearing and expects to continue to do so should any difficiutlies arise in coordinating claims. *Id.* ¶ 20.

Additionally, the risks accompanying litigation and its magnitude and complexities are great, as outlined above. *See supra*. There remains a great deal of risk with the litigation, particularly involving the engagement of experts, claims brought under the Drivers Privacy Protection Act, and the anticipated motion practice (motions to dismiss, motion for summary judgment, and a motion to certify the class). *See supra.* Further, the representation is high quality as Class Counsel was able to negotiate a favorable settlement for the Class Members and has extensive experience bringing similar actions and data exposure matters to settlement. (Joint Declaration of Class Counsel ¶¶ 24–26). And, as comparable to the total amount of the Settlement Fund ($10,500,000), the proposed attorneys' fees of one-third of the Settlement Fund ($3,500,000) are routinely approved in this Circuit. *Central States Southeast & Southwest Areas Health & Welfare Fund.*, 504 F.3d at 249–250; *Azogue*, 2016 WL 4411422, at *6; *Carbone*, 2026 WL 686144, at *10. Finally, public policy favors the granting of percentage-based fees in class-action settlements to further incentivize attorneys to bring these matters to a close, while also providing compensation to class members, particularly in data security actions. *Carbone*, 2026 WL 686144, at *10; *see also In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, No. 18 Civ. 8472, 2022 WL 2063864, at *21 (S.D.N.Y. June 8, 2022) ("The public benefits when attorneys undertake a complex commercial case that implicates consumer protections and data privacy."). Therefore, this Court finds that the requested attorneys' fees are reasonable under the *Goldberger* factors as well.

Finally, Class Counsel is also seeking reimbursement of costs of $22,268[12] for unreimbursed costs. (ECF No. 58-1 ¶ 23). Under Rule 23(h) the Court may award nontaxable costs pursuant to a settlement agreement. Fed. R. Civ. P. 23(h). Such costs have been found to be reasonable in similar class action settlements. *Carbone*, 2026 WL 686144, at *10 (approving $7,564.41 in costs for research, court fees, mediation fees, and mailing expenses); *In re Hudson's Bay Co. Data Sec. Incident Consumer Litig.*, 2022 WL 2063864, at *22 (approving $53,200.60 in routine costs including, mediation, travel costs, research, and mailing fees). Class Counsel outlines expenses spanning mediation fees, travel, court costs, research costs, and general postage and service fees. (ECF No. 58-1 ¶ 23). Accordingly, Class Counsel's application for attorneys' fees and costs is approved.

## II. Service Awards

The Plaintiffs are also seeking two service awards of $2,000 for each of the named Plaintiffs. As outlined above, such awards are generally permitted by courts, particularly where the named Plaintiffs have carried the burden of bringing the action. *Hyland*, 48 F.4th at 124; *Stinson*, 256 F. Supp. 3d at 295. Here, the named Plaintiffs have been helpful and have spent substantial time participating in document production, reviewing pleadings, and reviewing the Settlement Agreement itself. (ECF No. 58-1 ¶ 11). Therefore, the Court approves the service awards of $2,000 each.

---

[12]The Motion for Final Approval cites $32,268 as the total amount of costs, while the Declaration attached to the Motion for Attorneys' Fees has the total at $22,268. Counsel clarified on the record at the Fairness Hearing that they are seeking $22,268 in costs.

**Conclusion**

For all of the above reasons, the Motion for Final Approval and Motion for Attorneys' Fees are GRANTED. **The Clerk of the Court is directed to terminate the pending motions at ECF Nos. 57 and 60.**

**SO ORDERED.**

DATED: New York, New York
September 10, 2026

Katharine H Parker

KATHARINE H. PARKER
United States Magistrate Judge